**Judith B. Memblatt, Esq.**
98-51 65th Avenue #2A
Rego Park, NY 11374
646-239-2635

<u>BY HAND</u>
June 9, 2005

Judge Raymond J. Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

|  |  |
|---|---|
| Re: | Memblatt v. Rios, et al. |
| Case No. | 05 CV 1021 (RJD) (LB) |

Dear Judge Dearie:

On June 8, 2005, I received a letter from Madaleine S. Egelfeld, Esq. to the Court, postmarked June 6, 2005 and dated June 1, 2005. Based upon Ms. Egelfeld's letter, it seems doubtful that the defendants intend to engage in meaningful negotiations pursuant to Your Honor's Mediation Order herein. That Order was issued after I filed my responses to the requests by Ms. Egelfeld and John Quinn, Esq. for a pre-motion conference regarding their proposed Fed. R. Civ. P.12(b)(6) motions to dismiss. Neither Ms. Egelfeld nor Mr. Quinn has served an answer to the complaint herein.

In her latest letter, Ms. Egelfeld requests "Your Honor's imprimatur as confirmation" that it would be appropriate for her and Mr. Quinn to proceed by filing motions to dismiss in the event that the mediation is unsuccessful. It is respectfully submitted that these applications should be denied in their entirety for the reasons stated in my responses to the requests for a pre-motion conference. Copies of my responses are annexed hereto and are incorporated by reference as if fully set forth at length herein.

It is noted that defendants Jonathan Lippman and Lauren DeSole have defaulted in answering the complaint in this action. I have filed motions for the entry of default judgments against them. Although I have advised Assistant Attorney General Constantine A. Speres of my willingness to withdraw those motions if said defendants enter into stipulations consenting to the jurisdiction of the Court herein, he has failed to provide any response to that proposal. Additionally, no opposition to said motions has been served.

Thank you for your attention to this matter.

Sincerely,

Judith B. Memblatt, Esq.
Plaintiff *Pro Se*

cc.     Madaleine S. Egelfeld, Esq.

         John E. Quinn, Esq.

         Constantine A. Speres, Assistant Attorney General

RECEIVED
JUN 0 9 2005
PRO SE OFFICE

Judith B. Memblatt, Esq.
98-51 65th Avenue  #2A
Rego Park, NY 11374
646-239-2635

May 19, 2005

Judge Raymond J. Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

RECEIVE
MAY 1 9 2005
PRO SE OFFICE

          Re:          Memblatt v. Rios, et al.
          Case No.     05 CV 1021 (RJD) (LB)

Dear Judge Dearie:

This letter constitutes plaintiff's response to defendant Koslowitz's application for a pre-motion conference with respect to her proposed Fed. R. Civ. P.12(b)(6) motion to dismiss.

Initially, although plaintiff is an attorney duly admitted to practice before the Courts of the State of New York, inasmuch as she is not admitted to practice before this Court, it appears that the request of the defendant for a pre-motion conference may be inappropriate.

Defendant's main argument with respect to the instant application relies upon a specious misinterpretation of the applicable law. In those cases brought pursuant to 42 U.S.C. § 1983 in which the ultimate acts complained of were committed by a private actor, it is necessary, as a threshold matter, for the court to determine whether the relevant factual situation involved any act committed under color of state law. Such standards are inapplicable to cases, such as the instant action, where it is beyond dispute that the ultimate acts complained of (e.g., adverse employment actions and discharge from employment as a principal law clerk) were undertaken under color of state law. A claim under § 1983, "may be proved by showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right." *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir. 1980). As the Second Circuit explained in *Scotto v. Armenas*, 143 F.3d 105 (2d Cir. 1998), private parties may be found liable under § 1983 for conspiring with state officials who act under color of state law, even in cases where the state officials are entitled to absolute immunity from suit upon the basis that they were performing official acts entitling them to such protection. Accordingly, it is clear that, in cases in which the ultimate acts were undertaken under color of state law by a state official, private individuals may be found liable for conspiring with the state official in regard to the commission of those acts. Defendant's assertion that the mere existence of rules pertaining to cases in which there must be an initial determination as to whether any act undertaken was committed under color of state law somehow precludes any claim where there is no question but that the act was undertaken under color of state law is fatally flawed and provides no basis whatsoever for the requested relief.

The contention that the allegations of the complaint are conclusory and do not demonstrate the personal involvement of defendant Koslowitz herein are simply disingenuous. There are so many particulars alleged in the complaint (including sufficient details with respect to time, place and the overt acts undertaken in furtherance of the defendants' agreement to act in

concert to inflict the unconstitutional injuries that they caused to plaintiff) that to recite all of them herein would almost certainly require exceeding the applicable limitation on the length of the response. So as not to violate that rule, this response outlines the nature of the allegations regarding the personal involvement of defendant Koslowitz (as well as defendants Manton, Sweeney and Reich who have brought a similar 12(b)(6) application) and respectfully refers the Court to the complaint for the remaining specifics.

The complaint alleges that, through their associations with the Democratic Organization of Queens County, defendants Manton, Reich, Sweeney and Koslowitz exercised almost total control over the Queens judiciary at all times relevant therein. The allegations of the complaint, which must be accepted as true for purposes of a 12(b)(6) motion, also state that, through their enormous influence over the judicial election process in Queens, defendants Manton, Sweeney and Reich gained the ability to control almost all of the personnel decisions with regard to many of the jobs in the courts in Queens, including that which formerly was held by plaintiff. The complaint recites that defendant Rios instructed plaintiff that, as a precondition to his hiring her as his court attorney in the Civil Court, she was required to ask defendant Koslowitz to obtain the approval of defendants Manton, Sweeney and Reich for him to hire her. The complaint alleges that plaintiff followed those instructions and that defendant Koslowitz obtained such approval from said defendants. The complaint states that, based upon defendant Koslowitz's participation and the approval of defendants Manton, Sweeney and Reich (which was personally communicated to defendant Rios by defendant Reich), defendant Rios hired plaintiff as his court attorney. The complaint alleges that defendant Rios also informed plaintiff that as a precondition to his hiring her as his principal law clerk in the Supreme Court in Queens, she was required to ask defendant Koslowitz to obtain the approval of defendants Manton, Sweeney and Reich for him to hire her. The complaint alleges that plaintiff followed those instructions and that defendant Koslowitz obtained such approval from defendants Manton, Sweeney and Reich. The complaint states that, based upon defendant Koslowitz's involvement and the approval of defendants Manton, Sweeney and Reich (which was personally communicated to defendant Rios by defendant Reich), defendant Rios hired plaintiff as his principal law clerk. The complaint chronicles that defendant Rios directed plaintiff to thank defendant Reich for the approval of her employment. The complaint notes that when plaintiff did so, defendant Reich stated to her that she should thank defendant Koslowitz for that approval. The complaint also reflects that, simultaneously with plaintiff's exclusion from the inner circle of the Continental Regular Democratic Club by defendant Koslowitz (who was seeking to ameliorate then-Democratic District Leader Michael Cohen's rage over the fact that plaintiff was not fired as part of the political vendetta that Cohen initiated after he lost a special election for a New York State Assembly seat), defendant Rios' treatment of plaintiff drastically changed and he began subjecting plaintiff to a hostile work environment. Additionally, the complaint notes that, as early as June 1995, due to the symbiotic relationship that existed between defendants Koslowitz, Manton, Sweeney, Reich and Rios, plaintiff spoke to defendant Koslowitz about the anti-Semitism to which she was being subjected by defendant Rios. The complaint states that defendant Koslowitz instructed plaintiff to refrain from making an issue of defendant Rios' anti-Semitism, and, repeatedly represented that she could arrange for plaintiff to be transferred to another judge. The complaint alleges that defendant Koslowitz expressed anger when plaintiff refused to sweep defendant Rios' anti-Semitism under the rug and accept a transfer. The complaint also alleges that, after plaintiff's relations with both the Continental Regular Democratic Club and the Democratic Organization of Queens County completely ended, defendant Rios repeatedly threatened plaintiff that she "had better start going to" the fund-raising events held by the latter organization. Based upon the surrounding circumstances, it is apparent that he was

communicating those threats at the behest of defendants Manton, Sweeney, Reich and Koslowitz. The complaint also relates an incident during which defendant Sweeney asked plaintiff, "Didn't you used to be Judge Rios' law clerk?," although he clearly was aware that plaintiff still was employed in that position at the time. Defendant Sweeney's posing of that question can fairly be interpreted as the communication of a politically-motivated threat to plaintiff's continued employment in that position. The complaint further alleges that defendants Manton, Sweeney, Reich, Koslowitz, Rios and their co-defendants herein all were personally involved in the fabrication of a pretext for plaintiff to be discharged (to protect defendant Rios from accountability for his own misconduct and, *inter alia,* to punish plaintiff for the unlawful reasons described in the complaint). The complaint reflects that this is a case in which more than one unconstitutional motive was involved. The unconstitutional motives attributed to defendants Manton, Sweeney, Reich and Koslowitz include political retaliation and retaliation for complaints (and attempted complaints) regarding discrimination, judicial misconduct and other matters of public concern. As stated in the complaint, the manufacture of the pretext for plaintiff's discharge included, *inter alia,* a prolonged campaign of defamatory oral and written statements falsely disparaging plaintiff's mental status and professional ability, which were communicated to plaintiff's colleagues, co-workers and others. The complaint alleges that defendants Manton, Sweeney, Reich and Koslowitz were as personally involved in defendant Rios' discharge of plaintiff as they were in his hiring of her for the two positions that she held with him. It demonstrates that defendants Manton, Sweeney, Reich and Koslowitz frequently communicated with defendant Rios with regard to the pretext to discharge plaintiff and that defendant Koslowitz's daughter, defendant Higgins, often served as a go-between for such communications. The complaint alleges that on March 5, 2003, defendant Higgins entered defendant Rios' chambers and, together with defendants Newsome and Rios, childishly mocked plaintiff as plaintiff worked. The allegations of the complaint demonstrate that defendants Manton, Sweeney, Reich and Koslowitz gave defendant Rios their approval for his unlawful actions against plaintiff, and that, due to their political influence, he considered such approval necessary before he would undertake the adverse employment actions set forth in the complaint and ultimately discharge plaintiff pursuant to the scheme in which the defendants were jointly involved. In punishing plaintiff, the defendants sought to send a chilling message to other court employees. As asserted in the complaint, the judiciary is a branch of government in which such partisan political retaliation is impermissible -- the public must have confidence that the judiciary will not punish citizens based upon their political affiliations or lack thereof. In the face of the detailed allegations of the complaint, which amply support the claims raised therein, the defendant has brought a *pro forma* application that is totally devoid of any merit.

In light of the foregoing, the instant application should be denied in its entirety.

Respectfully submitted,

Judith B. Memblatt, Esq.
Plaintiff *Pro Se*

c.c.    Constantine A. Speres, Assistant Attorney General

        Madaleine S. Egelfeld, Esq.

        John E. Quinn, Esq.

**Judith B. Memblatt, Esq.**
98-51 65th Avenue  #2A
Rego Park, NY 11374
646-239-2635

May 19, 2005

Judge Raymond J. Dearie
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

RECEIVED

MAY 1 9 2005

PRO SE OFFICE

Re:  Memblatt v. Rios, et al.
Case No.  05 CV 1021 (RJD) (LB)

Dear Judge Dearie:

This letter constitutes plaintiff's response to the application of defendants Manton, Sweeney and Reich for a pre-motion conference with respect to their proposed Fed. R. Civ. P.12(b)(6) motion to dismiss.

Initially, although plaintiff is an attorney duly admitted to practice before the Courts of the State of New York, inasmuch as she is not admitted to practice before this Court, it appears that the request of these defendants for a pre-motion conference may be inappropriate.

Defendants' main argument with respect to the instant application relies upon a specious misinterpretation of the applicable law. In those cases brought pursuant to 42 U.S.C. § 1983 in which the ultimate acts complained of were committed by a private actor, it is necessary, as a threshold matter, for the court to determine whether the relevant factual situation involved any act committed under color of state law. Such standards are inapplicable to cases, such as the instant action, where it is beyond dispute that the ultimate acts complained of (e.g., adverse employment actions and discharge from employment as a principal law clerk) were undertaken under color of state law. A claim under § 1983, "may be proved by showing that a person acting under color of state law . . . collaborated or conspired with a private person . . . to deprive the plaintiff of a constitutional right." *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir. 1980). As the Second Circuit explained in *Scotto v. Amenas*, 143 F.3d 105 (2d Cir. 1998), private parties may be found liable under § 1983 for conspiring with state officials who act under color of state law, even in cases where the state officials are entitled to absolute immunity from suit upon the basis that they were performing official acts entitling them to such protection. Accordingly, it is clear that, in cases in which the ultimate acts were undertaken under color of state law by a state official, private individuals may be found liable for conspiring with the state official in regard to the commission of those acts. Defendants' assertion that the mere existence of rules pertaining to cases in which there must be an initial determination as to whether any act undertaken was committed under color of state law somehow precludes any claim where there is no question but that the act was undertaken under color of state law is fatally flawed and provides no basis whatsoever for the requested relief.

The contention that the allegations of the complaint are conclusory and do not demonstrate the personal involvement of the defendants herein are simply disingenuous. There are so many particulars alleged in the complaint (including sufficient details with respect to time, place

and the overt acts undertaken in furtherance of the defendants' agreement to act in concert to
inflict the unconstitutional injuries that they caused to plaintiff) that to recite all of them herein
would almost certainly require exceeding the applicable limitation on the length of the
response. So as not to violate that rule, this response outlines the nature of the allegations
regarding the personal involvement of the defendants and respectfully refers the Court to the
complaint for the remaining specifics.

The complaint alleges that, through their associations with the Democratic Organization of
Queens County, defendants Manton, Reich, Sweeney and Koslowitz exercised almost total
control over the Queens judiciary at all times relevant therein. The allegations of the complaint,
which must be accepted as true for purposes of a 12(b)(6) motion, also state that, through their
enormous influence over the judicial election process in Queens, defendants Manton,
Sweeney and Reich gained the ability to control almost all of the personnel decisions with
regard to many of the jobs in the courts in Queens, including that which formerly was held by
plaintiff. The complaint recites that defendant Rios instructed plaintiff that, as a precondition to
his hiring her as his court attorney in the Civil Court, she was required to ask defendant
Koslowitz to obtain the approval of defendants Manton, Sweeney and Reich for him to hire her.
The complaint alleges that plaintiff followed those instructions and that defendant Koslowitz
obtained such approval from said defendants. The complaint states that, based upon
defendant Koslowitz's participation and the approval of defendants Manton, Sweeney and
Reich (which was personally communicated to defendant Rios by defendant Reich), defendant
Rios hired plaintiff as his court attorney. The complaint alleges that defendant Rios also
informed plaintiff that as a precondition to his hiring her as his principal law clerk in the
Supreme Court in Queens, she was required to ask defendant Koslowitz to obtain the approval
of defendants Manton, Sweeney and Reich for him to hire her. The complaint alleges that
plaintiff followed those instructions and that defendant Koslowitz obtained such approval from
defendants Manton, Sweeney and Reich. The complaint states that, based upon defendant
Koslowitz's involvement and the approval of defendants Manton, Sweeney and Reich (which
was personally communicated to defendant Rios by defendant Reich), defendant Rios hired
plaintiff as his principal law clerk. The complaint chronicles that defendant Rios directed
plaintiff to thank defendant Reich for the approval of her employment. The complaint notes
that when plaintiff did so, defendant Reich stated to her that she should thank defendant
Koslowitz for that approval. The complaint also reflects that, simultaneously with plaintiff's
exclusion from the inner circle of the Continental Regular Democratic Club by defendant
Koslowitz (who was seeking to ameliorate then-Democratic District Leader Michael Cohen's
rage over the fact that plaintiff was not fired as part of the political vendetta that Cohen
initiated after he lost a special election for a New York State Assembly seat), defendant Rios'
treatment of plaintiff drastically changed and he began subjecting plaintiff to a hostile work
environment. Additionally, the complaint notes that, as early as June 1995, due to the
symbiotic relationship that existed between defendants Koslowitz, Manton, Sweeney, Reich
and Rios, plaintiff spoke to defendant Koslowitz about the anti-Semitism to which she was
being subjected by defendant Rios. The complaint states that defendant Koslowitz instructed
plaintiff to refrain from making an issue of defendant Rios' anti-Semitism, and, repeatedly
represented that she could arrange for plaintiff to be transferred to another judge. The
complaint alleges that defendant Koslowitz expressed anger when plaintiff refused to sweep
defendant Rios' anti-Semitism under the rug and accept a transfer. The complaint also alleges
that, after plaintiff's relations with both the Continental Regular Democratic Club and the
Democratic Organization of Queens County completely ended, defendant Rios repeatedly
threatened plaintiff that she "had better start going to" the fund-raising events held by the latter
organization. Based upon the surrounding circumstances, it is apparent that he was

communicating those threats at the behest of defendants Manton, Sweeney, Reich and Koslowitz. The complaint also relates an incident during which defendant Sweeney asked plaintiff, "Didn't you used to be Judge Rios' law clerk?," although he clearly was aware that plaintiff still was employed in that position at the time. Defendant Sweeney's posing of that question can fairly be interpreted as the communication of a politically-motivated threat to plaintiff's continued employment in that position. The complaint further alleges that defendants Manton, Sweeney, Reich, Koslowitz, Rios and their co-defendants herein all were personally involved in the fabrication of a pretext for plaintiff to be discharged (to protect defendant Rios from accountability for his own misconduct and, *inter alia*, to punish plaintiff for the unlawful reasons described in the complaint). The complaint reflects that this is a case in which more than one unconstitutional motive was involved. The unconstitutional motives attributed to defendants Manton, Sweeney, Reich and Koslowitz include political retaliation and retaliation for complaints (and attempted complaints) regarding discrimination, judicial misconduct and other matters of public concern. As stated in the complaint, the manufacture of the pretext for plaintiff's discharge included, *inter alia*, a prolonged campaign of defamatory oral and written statements falsely disparaging plaintiff's mental status and professional ability, which were communicated to plaintiff's colleagues, co-workers and others. The complaint alleges that defendants Manton, Sweeney, Reich and Koslowitz were as personally involved in defendant Rios' discharge of plaintiff as they were in his hiring of her for the two positions that she held with him. It demonstrates that defendants Manton, Sweeney, Reich and Koslowitz frequently communicated with defendant Rios with regard to the pretext to discharge plaintiff and that defendant Koslowitz's daughter, defendant Higgins, often served as a go-between for such communications. The complaint alleges that on March 5, 2003, defendant Higgins entered defendant Rios' chambers and, together with defendants Newsome and Rios, childishly mocked plaintiff as plaintiff worked. The allegations of the complaint demonstrate that defendants Manton, Sweeney, Reich and Koslowitz gave defendant Rios their approval for his unlawful actions against plaintiff, and that, due to their political influence, he considered such approval necessary before he would undertake the adverse employment actions set forth in the complaint and ultimately discharge plaintiff pursuant to the scheme in which the defendants were jointly involved. In punishing plaintiff, the defendants sought to send a chilling message to other court employees. As asserted in the complaint, the judiciary is a branch of government in which such partisan political retaliation is impermissible - - the public must have confidence that the judiciary will not punish citizens based upon their political affiliations or lack thereof. In the face of the detailed allegations of the complaint, which amply support the claims raised therein, the defendants have brought a *pro forma* application that is totally devoid of any merit.

In light of the foregoing, the instant application should be denied in its entirety.

Respectfully submitted,

Judith B. Memblatt, Esq.
Plaintiff *Pro Se*

c.c.    Constantine A. Speres, Assistant Attorney General

        Madaleine S. Egelfeld, Esq.

        John E. Quinn, Esq.