UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 2 9 2005

P.M.
TIME A.M.

```
----------------------------X
                            :
JUDITH B. MEMBLATT,         :
                            :   CV-05-1021 (RJD)(LB)
              Plaintiff,    :
                            :   November 10, 2005
         v.                 :
                            :   Brooklyn, New York
JAIME A. RIOS, et al.,      :
                            :
              Defendants.   :
                            :
----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JUDITH B. MEMBLATT, PRO SE



For the Defendant:          CONSTANTINE SPERES, ESQ.
                            MADALEINE S. EGELFELD, ESQ.
                            SALLY UNGER, ESQ.
                            JOHN QUINN, ESQ.

Audio Operator:

Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            328 President Street, #3
                            Brooklyn, New York 11231
                            (718) 522-2335

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Civil cause for initial conference,

 2    docket number 05-CV-1021, Memblatt versus Rios, et al.  If

 3    the parties would please state your names for the record.

 4              Ms. Memblatt?

 5              MS. MEMBLATT:  Judith B. Memblatt, plaintiff pro

 6    se.

 7              MS. UNGER:  Sally E. Unger, of counsel to the law

 8    offices of Madaleine Egelfeld, for defendant Karen

 9    +Koslowitz.

10              MR. SPERES:  Constantine Speres from the New York

11    State attorney general's office for the State defendants.

12              MR. QUINN:  John Quinn of the law firm of Renfroe

13    & Quinn for the private defendants Thomas Manton (ph),

14    Gerard Sweeney (ph) and Mike O'Reilly (ph).

15              THE COURT:  Good afternoon, Ms. Memblatt.  Good

16    afternoon, Ms. Unger.  Good afternoon, Mr. Speres and good

17    afternoon, Mr. Quinn.

18              I was informed by my clerks, which is why we

19    delayed coming on the bench, that we were waiting for an

20    additional defense attorney.  Who is it that I'm supposedly

21    missing?

22              MS. UNGER:  Madaleine Egelfeld is on her way as

23    well, but she instructed me to go forward without her.

24              THE COURT:  You're from her office.

25              MS. UNGER:  Excuse me?
```

1          THE COURT:  You're from her office?

2          MS. UNGER:  We're actually co-counsel.  I'm from a

3   separate office.

4          THE COURT:  Okay.  But it's for the same

5   defendant?

6          MS. UNGER:  Yes.

7          THE COURT:  Then we're safe, okay.  I was trying

8   to figure out who we were missing.  This is an initial

9   conference before the Court.

10         Ms. Memblatt, there was some confusion because my

11  order setting this conference said that the 26(f) meeting

12  should take place prior to the conference.  However,

13  unbeknownst to me, there had been applications made to Judge

14  Dearie, who is the assigned district judge on the case, to

15  forestall all discovery in the case, so that there could be

16  motions made in lieu of answers to the complaint.

17         In light of that, the state system is somewhat

18  different than the federal system.  In the federal system,

19  we work as magistrate judge and district judge in tandem.

20  However, in this district, magistrate judges handle all

21  pretrial proceedings by local rule.  So any applications

22  regarding discovery, adjournments should be made to my

23  attention.  Going to Judge Dearie will only confuse matters

24  and will not simplify anybody's life.

25         I set the conference not knowing that there were

1    applications that were going to be made to move in lieu of

2    an answer, so that was our first mis-step, and so I

3    apologize for any confusion that my order caused.  I then

4    stayed the response to the complaint and stayed any

5    discovery obligation until we came to today's conference, so

6    we could get sorted out who was intending to move against

7    the complaint.

8            This is a 1983 action brought.  Ms. Memblatt, I've

9    read your complaint.  It took me a while.  You started with

10   OCA as a court attorney back in 1993.  You report that there

11   were a number of things that happened in 1994, 1995 and

12   1996.

13           The first mention of what you call an adverse

14   action happens in September of 2002.  It's in paragraph 97

15   of your complaint, where you say that Judge Rios reassigned

16   the counsel voucher job to somebody in chambers, which you

17   say again was an adverse impact on your job.  You then say

18   in paragraph 134 that in August of '03, he again assigned

19   Newsome to maintain files of the appellate division

20   decisions, and that that was an adverse impact.

21           There is of course crossover between 1983 and

22   employment discrimination actions.  This is a complaint

23   under 1983 alleging religious and racial discrimination and

24   retaliation.  My question, ma'am, is why did you choose not

25   go to through the EEOC process on a complaint of employment

1  discrimination?

2          MS. MEMBLATT:  For one thing, you're talking in

3  terms of bringing a Title VII complaint?

4          THE COURT:  That's generally how we see religious

5  and race discrimination claims.

6          MS. MEMBLATT:  It's my understanding that 1983 is

7  separate and apart from Title VII.

8          THE COURT:  It is.  It's only a question.  It

9  doesn't affect the jurisdiction of the Court.

10          MS. MEMBLATT:  There has also been at least one

11  district court ruling saying that because of the personal

12  exemption for judicial staff in Title VII, that it would not

13  be applicable to my position in any event.

14          THE COURT:  I understand what you're saying.

15          MS. MEMBLATT:  Which is another reason.

16          THE COURT:  Let me ask one other question, then.

17  Since you know that 1983 has a three-year statute of

18  limitations, that you can only bring a claim in federal

19  court under 1983 three years from the date that the claim

20  accrues, why are you giving me so much information about

21  things that happened well before the statute of limitations?

22          MS. MEMBLATT:  Because I believe that under a

23  hostile work environment theory, you're entitled --

24          THE COURT:  Again, I think you're mixing Title VII

25  causes of action with Section 1983 causes of action.

1          MS. MEMBLATT:  I also have of course state causes

2    of action.  But it was my intent in bringing --

3          THE COURT:  Well, the state causes of action pose

4    a separate problem for you.  Let me just -- and I note for

5    the record that we are joined by Ms. Unger's associate, Ms.

6    Egelfeld?

7          MS. EGELFELD:  Egelfeld.

8          THE COURT:  Egelfeld.  I'm sorry, I can't read

9    your writing that well.  If you want to sign on to the

10   appearance sheet at the end of this --

11         MS. EGELFELD:  Yes.

12         THE COURT:  -- we'll give you an opportunity to do

13   so.

14         Ms. Memblatt, you don't need to thumb through the

15   complaint today.  I was asking general questions that were

16   in my mind in going through your complaint.

17         MS. MEMBLATT:  Actually, Judge, it was my

18   understanding that we were basically here for the purposes

19   of setting forth a schedule as far as the motions,

20   particularly since the discovery --

21         THE COURT:  We are, but at any initial --

22         MS. MEMBLATT:  And that anything that related to

23   the substance of the complaint is something that would be

24   addressed presumably in motions in writing.

25         THE COURT:  Well, every judge handles their own

1  courtroom in their own way.

2          MS. MEMBLATT:  Of course, your Honor.

3          THE COURT:  And I always like to talk about, since

4  I've taken the time and it's fresh in my mind to review the

5  entire complaint -- I always like to raise these as initial

6  matters, because these were things that were going through

7  my head when I'm reviewing the complaint.

8          Let me also say that because you're in federal

9  court and the state has immunity under the Eleventh

10  Amendment for any action for damages, you can't sue anybody

11  in their official capacity.

12          MS. MEMBLATT:  Judge, I'm not suing anyone in

13  their official capacity.

14          THE COURT:  Okay, because that was something that

15  I believe the defendants, in some of their papers believed,

16  that you were suing people in their official capacity.

17          MS. MEMBLATT:  Well, I -- I'm sorry, your Honor.

18          THE COURT:  It's okay.  I'm raising things that I

19  think are going to be addressed, without even getting to the

20  defendants raising their hand.

21          MS. MEMBLATT:  I think as far back as the

22  inception of the case, in the earliest communications, Mr.

23  Speres in one of his letters had indicated that it was his

24  presumption that the defendants were being sued in their

25  official capacity.  And in a writing back to him, I stated

1  there is no reference in here, in the complaint, specifying

2  that anyone is being sued in their official capacity,

3  because there would be no jurisdiction of this Court over

4  that.

5  THE COURT:  I'm just raising the obvious points

6  here.  And one of the things that I certainly wanted to

7  address, Ms. Memblatt, which I'm more than glad to hear from

8  the other side as well on -- this case was initially sent

9  out for mediation.  That's what Judge Dearie did when it

10  first hit the Court's docket.  What happened with the

11  mediation?

12  MS. MEMBLATT:  It was unsuccessful.

13  THE COURT:  That I could tell you.

14  MS. MEMBLATT:  We were all informed that we --

15  that the matter was confidential and that the substance of

16  the discussions could not even be discussed with the Court.

17  THE COURT:  I guess what I'm asking, which I don't

18  need to go blow by blow what happened in the mediation -- I

19  like to ask plaintiffs at the initial conference what it is

20  that they're hoping to accomplish by bringing this action.

21  I am asking you the same thing.

22  MS. MEMBLATT:  I'm seeking to be compensated for

23  the damages done to my -- the considerable if not total

24  damage done to my legal career through the actions of the

25  defendants, meaning all of the defendants, every single one

1  having personal involvement.

2          I am not interested in just pursuing the matter

3  for the sake of pursuing the matter, if it's possible to

4  settle it.  It is my understanding -- well, I have not been

5  presented thus far with any offer in any context that would

6  lead me to believe that the defendants are serious about

7  settling the matter; at least not at this stage and not

8  until motions for -- the motions have been adjudicated that

9  they're bringing at this point.

10          THE COURT:  For instance, let me just ask -- you

11  have claims for, as you put them, defamation.  And

12  defamation has a short statute of limitations under state

13  law.  How are we getting around that problem?

14          MS. MEMBLATT:  Your Honor, if possible, I would

15  prefer to defer any --

16          THE COURT:  Argument on the substance.

17          MS. MEMBLATT:  -- argument to the written motions.

18          THE COURT:  Okay.  I'm trying to tell you that

19  with a fresh look at the papers -- I haven't met you, I

20  haven't met the defendants.  I'm looking at the federal law,

21  so all of the Shepherd (ph) cases, I, II and III, the last

22  one being the one in 2003 that the Circuit upheld.  Again,

23  this is after it was sent back twice by Judge Glasser.

24          But the language in Shepherd III is quite clear

25  that after there is a chance here on evaluating the

1   Pickering standards, the disruption and the value of the

2   speech, et cetera, but that's only to the judge that you

3   worked for.  I don't see those claims as to the host of

4   characters that we have in this action, which I haven't

5   counted how many defendants but I --

6           MS. MEMBLATT:  Judge, there are twelve defendants.

7   Again, I would ask to reserve any argument on this for the

8   motions.

9           THE COURT:  Okay.  Let me ask you, on behalf of --

10  Mr. Speres, I'm going to turn to you in the first instance.

11          MR. SPERES:  Sure.

12          THE COURT:  If you could address for me what the

13  state defendants -- I guess that's Rios, Lippmann, Fisher,

14  DeSole, D'Angelis, Gardner, Newsome and Higgins; is that

15  correct?

16          MR. SPERES:  I believe that's correct.  There are

17  eight.

18          THE COURT:  Eight, that's it.

19          MR. SPERES:  Yes.

20          THE COURT:  What is their intention in this

21  matter?

22          MR. SPERES:  We intend to move to dismiss the

23  complaint, your Honor.  The one issue that you raised is the

24  Eleventh Amendment immunity issue.  Now I know I raised that

25  in a letter with Ms. Memblatt, but if you read the

1  complaint, the way she describes each of the defendants is

2  in their official capacity.  There is no mention --

3        THE COURT:  You can make the argument in writing

4  because I don't know whether Judge Dearie is going to refer

5  the motion, so I don't want you to waste your time with me.

6  My question is, quite frankly, I don't see a motion to

7  dismiss against Judge Rios.  And I'm being quite frank here

8  because I'd like to narrow what we get to and what we don't

9  get to.

10        In the Shepherd case, it was clear that there was

11  discovery before the Court of Appeals affirmed the judgment

12  of the district court.  I can't imagine that this case on

13  the face of it is not going to be sufficient against Judge

14  Rios.

15        MR. SPERES:  Your Honor, I respectfully disagree.

16  However, if it is not sufficient in all respects, there are

17  many claims against Judge Rios that I think a motion to

18  dismiss will get rid of, thereby narrowing the scope of

19  discovery, should a motion to dismiss not survive.  For

20  example --

21        THE COURT:  I think that's a fair statement.  I

22  don't think that I need further explanation of that.  As

23  I've tried to raise with Ms. Memblatt, I don't think that

24  because she's alleging a hostile work environment, for

25  instance, that that means that she gets to go past the

1   three-year statute of limitations.  So things that happened

2   prior to -- the case was filed -- I'm sorry, I think it was

3   in February of 2005, so it would go back three years, to

4   2002, so things that were prior to that date.

5          MS. MEMBLATT:  Of course, your Honor, in addition

6   to the religious discrimination, I have complaints of a 1983

7   conspiracy with respect to political discrimination.

8          THE COURT:  But again, ma'am, you're going to have

9   to establish what your claims are.  You have a lot of

10  factual allegations.  But then when you were stating each of

11  your causes of action, you just referred back to the factual

12  allegations.  Again, I said starting in paragraph 97, we've

13  reached 2002.

14         And prior to those factual allegations, we're in

15  time periods that may not be covered under Section 1983.

16  Whether you're claiming it's discrimination based on

17  political affiliation, discrimination based on religion,

18  discrimination based on race, conspiracy under 1985, any of

19  those, it really still is a three-year statute of

20  limitations.

21         MS. MEMBLATT:  Right.  I thought that it would be

22  best and perhaps easier, in view of the complexity and the

23  length of the situation involved, to get as comprehensive a

24  picture --

25         THE COURT:  You're entitled to put history down to

1    inform people, but the people that are in the complaint

2    prior to the dates that we're going to be looking at for

3    purposes of statute of limitations, which I assume is one of

4    the -- and I don't mean to put anything in Mr. Quinn's mouth

5    or into Ms. Egelfeld's mouth.  But I imagine that that's one

6    of the things that they're going to raise.

7              For instance, when you're talking about the -- and

8    I think you just said it -- political affiliation claims,

9    those go back to when you were first hired.

10             MS. MEMBLATT:  The inception goes back to when I

11   was first hired.  But what I do have in the complaint is

12   factual information, which includes circumstantial

13   information, which I believe in this sort of case, it's

14   appropriate to rely on.

15             THE COURT:  You're entitled to put as much in it

16   as you want.  But what I'm saying is --

17             MS. MEMBLATT:  That these same individuals --

18             THE COURT:  -- when it comes to the motion --

19             MS. MEMBLATT:  Right.

20             THE COURT:  -- it's not the facts that matter as

21   much as your theory of how those facts apply within Section

22   1983.  Again, Section 1983 does not embody anything in

23   particular.  It says the rights as guaranteed by the

24   Constitution and laws of the United States.  Not every claim

25   of speech is a First Amendment claim, not every claim of

1  discrimination will qualify under 1983.

2          MS. MEMBLATT:  The point that I was making is when

3  it comes to the defendants represented by Mr. Quinn's office

4  and by Ms. Egelfeld's and Ms. Unger, I am not speaking in

5  the complaint solely of matters that come before the statute

6  of limitations period, but I'm showing, within what I've put

7  forth there, the involvement of --

8          THE COURT:  But again, they are -- I understand

9  what you're saying but --

10          MS. MEMBLATT:  But the actions that are taken are

11  within the statute of limitations that I'm complaining about

12  as to them.

13          THE COURT:  Quite frankly, I don't see it,

14  especially as to Mr. Quinn's -- the named defendants.   It

15  looks like you're trying to, in some respects, be a whistle

16  blower to undo the political machine that exists, you say in

17  Queens, as it was found to exist in Brooklyn.  But again,

18  that's not what this particular case is about.

19          MS. MEMBLATT:  To an extent, Judge, I would

20  maintain that a big part of it is what this case is in fact

21  about.

22          THE COURT:  Ms. Memblatt, it may be what you're

23  trying to make the case about, but you weren't fired back in

24  1994, 1995 or 1996.  In fact, looking at some of the

25  allegations in the complaint, and I think it was said very

1  well in the last Shepherd case -- this is the Second Circuit

2  speaking:

3           "Despite exhaustive discovery, Shepherd has been

4  unable to produce an iota of evidence that Judge Bierman

5  (ph) terminated him to prevent him from speaking about

6  Bierman's alleged misconduct.  At its core, Shepherd's

7  argument is that he was terminated because he threatened to

8  go forward and expose Bierman's corruption.

9           "As the district court observed, however, this

10  contention is disproved rather than proved by the act of

11  termination, since that act, as described by Shepherd, was

12  akin to an invitation to speak."

13           Here, I know that these allegations that you're

14  putting into this federal court complaint were things that

15  you gathered over a long period of time.  That's clear.

16  I've looked through and the allegations do go back to the

17  beginning of your time with the judge.  You've collected

18  things from his diary off his desk, you've collected things

19  to put into the Court's hands.  You didn't do that before

20  you were fired.

21           MS. MEMBLATT:  I don't believe that's correct.  I

22  don't think I collected anything after I was fired.

23           THE COURT:  No, I'm saying you collected it while

24  you worked there, but you didn't put it into the public

25  forum until after you were fired.

1          MS. MEMBLATT:  Judge, I think that it's clear from

2  the complaint that I did have -- make statements which were

3  protected statements.  Protected statements, it is my

4  understanding, do not have --

5          THE COURT:  That's what you're going to argue --

6          MS. MEMBLATT:  -- to be made in a public forum but

7  can be made internally.

8          THE COURT:  It has to be about matters of public

9  concern.  I don't know if a judge is having an affair with

10  somebody, that that's going to qualify as a matter of public

11  concern.

12          MS. MEMBLATT:  Absolutely, and it also states in

13  my complaint that in the event during the December of 2003,

14  I believe it is, when I was coerced into taking annual leave

15  under threat of being fired, I attempted to raise misconduct

16  with two officials, Defendant DeSole and Defendant

17  D'Angelis, with Judge Rios present.  He, at that time and in

18  their presence, threatened to fire me immediately rather

19  than offering me the --

20          THE COURT:  But, Ms. Memblatt, again, I think that

21  -- and I have to be quite direct with you because you worked

22  in the court for a bunch of years, I've worked in the courts

23  for a bunch of years.  This is a nightmare.  The nightmare

24  may be in your life but certainly a nightmare for your

25  judge, that you are working in a court where everybody

1   depends on each other for confidentiality.  Number one

2   cannon, right?

3           You become a law clerk.  I understand that you may

4   not think confidentiality is one of your obligations, but

5   remember, in this particular instance, you were employed for

6   at least ten years before these actions that you're alleging

7   were adverse to your career.

8           MS. MEMBLATT:  That's -- well --

9           THE COURT:  I understand that there were comments

10  made that you have held on to by the secretary, who is not

11  your employer.

12          MS. MEMBLATT:  It's my understanding she does not

13  have to be the employer to participate in an act of

14  discrimination.

15          THE COURT:  Again, Ms. Memblatt, I'm trying to be

16  as direct and human to you as I can.  You are spilling the

17  beans here.  This is what you're doing.  You're spilling the

18  beans on all of the corruption that was going on in your

19  chambers.  But it's all personality driven, in a certain

20  respect.

21          MS. MEMBLATT:  No, Judge, I respectfully disagree

22  with you, and I will litigate this as far as I have to

23  litigate it.

24          THE COURT:  I know you will.  That's obvious,

25  ma'am.  But what I'm trying to say is you started in 1993.

1   If you read employment discrimination cases, which this is

2   not, if there are comments made over the course of time, in

3   order for it to be a hostile work environment under Title

4   VII, it has to be severe and pervasive.  Severe and

5   pervasive has been held not to constitute stray remarks,

6   comments over time.

7          MS. MEMBLATT:  Your Honor, I'm content to put

8   forth my allegations.  I think, under the case law, that

9   there is no question that I've got viable causes of action.

10  As far as confidentiality is concerned, I think that it does

11  not protect anyone from engaging in acts of clear

12  misconduct.

13          Just as if someone who was in an internal position

14  in the -- and I think it's been recognized by the Supreme

15  Court in the federal cases, actually.  If someone saw an

16  actual -- in a totally different scenario, nothing I'm

17  alleging -- saw an actual exchange of money in chambers, the

18  fact that they would otherwise be bound by confidentiality

19  is no --

20          THE COURT:  But don't you think there's a

21  difference between that and somebody sleeping with somebody?

22          MS. MEMBLATT:  Not --

23          THE COURT:  There's not a difference in your mind?

24          MS. MEMBLATT:  Not when --

25          THE COURT:  Between getting money under the table

1   in a case or sleeping with somebody?

2          MS. MEMBLATT:  Not when the somebody is a

3   prosecutor.

4          THE COURT:  And let me ask you, Ms. Memblatt, did

5   you ever think that maybe you should call your judge and

6   talk to him about it or speak to him before you --

7          MS. MEMBLATT:  Your Honor, what I did was, because

8   I did not think that that would have led to anything -- I

9   would not have thought that that would have led to anything other

10  than me being immediately fired, so I tried --

11         THE COURT:  You thought it was better to bring it

12  outside of his chambers, to call to the person that you're

13  accusing of sleeping with the judge.

14         MS. MEMBLATT:  To the person who appeared in the

15  courtroom on a routine basis at that --

16         THE COURT:  But again, you don't think that was

17  overstepping your bounds?

18         MS. MEMBLATT:  Overstepping my bounds, Judge?  I

19  think I could be seen as being required to do more than sit

20  back and do nothing, when a judge and a prosecutor are

21  having an affair while there were criminal defendants --

22  while there were defendants accused in criminal cases --

23         THE COURT:  You never saw them -- at least you

24  don't allege that you ever saw them.  It's because there

25  were notations on his blotter, there were calendar entries.

1          MS. MEMBLATT:  It was more than --

2          THE COURT:  But you never saw them engage in any

3  sort of sexual acts.

4          MS. MEMBLATT:  No, but she made -- the party that

5  we're talking about made statements to me directly about it,

6  like I've said.  There was no question in my mind about it.

7          THE COURT:  Okay, Ms. Memblatt, I'm just trying to

8  give you -- again, you're coming to a different court

9  system.  You're an attorney.  You're going to research the

10  law.  They're going to make their motions, you're going to

11  put in your opposition.

12          But I'm trying to tell you on first blush, reading

13  your complaint, that your complaint is a laundry list -- and

14  I get this quite often in employment cases -- of things that

15  went wrong on the job, things that went wrong between you

16  and the secretary; things that went wrong between you and

17  other people who came to speak to you, that they were

18  constantly laughing, people who came into chambers.

19          MS. MEMBLATT:  Judge, with all due respect, you

20  know, I think that's most unfair.

21          THE COURT:  That's what the allegations say, Ms.

22  Memblatt.  I'm not making this up.

23          MS. MEMBLATT:  I think this is -- we live in the

24  reality of a political environment.  None of us is naive not

25  to know that it exists and not to know that these jobs are

1  under political control.  Not to know that --

2          THE COURT:  That's how you got your job, Ms.

3  Memblatt.

4          MS. MEMBLATT:  Your Honor, most respectfully, it

5  has been held, I believe, that there is no issue as to

6  whether -- how someone came in does not affect any waiver of

7  their rights.

8          THE COURT:  I'm not saying waiver of anything, Ms.

9  Memblatt.  I'm just saying you're giving me, which it's a

10  different system -- thank goodness we don't have elected

11  judgeships in the federal court system, so it is not -- and

12  again, it's thought about in the senate, on the senate

13  floor, whether somebody should be approved, but it is not

14  something that goes through the political system in each

15  election term.

16          But what I'm saying to you is you came into this

17  system through the democratic club.  You say you were then

18  ostracized from the continental, regular, democratic club

19  because of some rift between two people, and this is way

20  back in the '90s.  So you're telling me that I should -- you

21  know, all of us live in this political environment.  I don't

22  particularly live in that political environment.

23          I'm not part of the state court system.  But I'm

24  saying as a lawyer looking at your complaint, a lot of what

25  your complaint is talking about is interpersonal dealings

1  with court officers who are coming in.  And again, a lot of

2  it is just grist for the mill, as far as I'm concerned.

3       MS. MEMBLATT:  Judge, I'm content to -- I think

4  that under the rules for motions to dismiss, where

5  allegations have to be taken as true --

6       THE COURT:  It's not that we're not going to take

7  the allegations as true.  It's whether or not they can

8  support a Section 1983 constitutional claim.  This is not a

9  claim that you get to make in a state court action.  It's

10  not a tort in the regular sense, ma'am.

11       MS. MEMBLATT:  Absolutely, Judge, but the reality

12  is what the reality is.  This is something that did happen

13  in the state system, under a political machine.  And when we

14  get -- when this comes to a trial, which I believe it will

15  come to a trial unless there is a settlement, I will be

16  asking the Court to instruct the jury that this solely

17  involves the state system and that nothing that is brought

18  up in the complaint should be taken as any reflection of any

19  kind involved with the federal system.

20       THE COURT:  Well, we have a long way to go, Ms.

21  Memblatt, before we get to jury instructions in such a case.

22  Let me get to the defendants' intention here, so that we

23  don't spin our wheels unnecessarily.

24       What are the defendants asking for in terms of

25  time to file the motion?

1          MR. SPERES:  Your Honor, I was hoping until

2   November 21st, if that's possible.

3          THE COURT:  Ms. Memblatt, how much time would you

4   like to oppose the motion?

5          MS. MEMBLATT:  Judge, most respectfully, the

6   defendants have had an inordinate amount of time.

7          THE COURT:  Ms. Memblatt, I'm asking you, if I'm

8   granting them until November 21st to file the motion, how

9   long do you need after that?

10         MS. MEMBLATT:  Judge, I would ask for five weeks

11  after that.

12         THE COURT:  That's fine.

13         MS. MEMBLATT:  However, Judge, they've just asked

14  for -- in their last papers, I think they were asking for --

15         THE COURT:  Ma'am, we're talking about November

16  21st.  We're talking eleven days from today.  I'm not

17  scheduling it any sooner than that, so let's not argue about

18  things that we're not going to argue about.  If you want

19  five weeks after that, I'll count the five weeks.  That's

20  not a problem.

21         MS. MEMBLATT:  Okay.

22         THE COURT:  So let's get that ironed out.  And

23  everybody else is on that same schedule.

24         MS. UNGER:  Yes, Judge.

25         THE COURT:  Okay.  November 21st.  You want five

1   weeks.  That puts you to December 26th.  Do you want to do it

2   after New Year's?

3           MS. MEMBLATT:  Well, you know, Judge, I really

4   think it's unfair, under my economic circumstances, for this

5   to be delayed even longer.

6           THE COURT:  Ms. Memblatt, we're talking eleven

7   days from now for them to file a motion.  You are not going

8   to be able to get any sort of relief quicker than that,

9   okay?  You want the five weeks.  That puts us to December

10  26th.  Is that what you want to file your -- serve your

11  opposition by, or do you want more time than that?

12          MS. MEMBLATT:  No, that's when I want to file my

13  opposition.

14          THE COURT:  Okay, December 26th, and that means

15  that we're into 2006 calendar for the reply.  In the federal

16  system, the motion is not flied with the Court until it is

17  complete, meaning that the opposition and the reply and the

18  motion are filed all on the same date.  So from December

19  26th, the two weeks comes to January 9th.  There are two days

20  out of those weeks where the Court is closed.  So if you

21  need to January 12th, I would consider that.

22          MS. MEMBLATT:  Your Honor, might I ask, is it

23  possible that it could be made in such a way that if I get

24  my opposition to the motions in sooner, then the two weeks

25  would run from whenever it is it comes in?

1        THE COURT:  No, because there are holiday periods

2   and people need to know what their lives are.  So January

3   12th for the fully briefed motion to be filed with the Court.

4        Ms. Memblatt, even though you're representing

5   yourself, which in the circuit, you will be held to higher

6   standards, in this Court, there are special rules under Rule

7   12.1 or 56.2 of notice that must be required with any motion

8   when there's a pro se litigant on the other side.  So I ask

9   you to observe those special provisions of notice.

10        MS. MEMBLATT:  Could I just get those dates again,

11   please?

12        THE COURT:  Certainly.  November 21st is when they

13   will serve on you, and I want it to be in her hands on those

14   dates.  So if you have to overnight it to her the night

15   before, do so.

16        Do you receive overnight mail at your present

17   address?

18        MS. MEMBLATT:  Yeah, it's my home address.

19        THE COURT:  But you can get Federal Express there.

20        MS. MEMBLATT:  I certainly can get Federal Express

21   there.

22        THE COURT:  I'm just making sure because again,

23   I'm sure they're going to want to have a tracking slip to

24   make sure that it's been delivered within the time frame.

25   And then you are going to have the five weeks, which gets us

1   to December 26th.  December 26th is when your opposition will

2   be due.  They have to get it by that date.  Then they will

3   have until January 12th to file the fully briefed motion with

4   the Court.

5           I'll ask Mr. Speres to take the laboring oar, to

6   make sure that the entire motion is filed with the Court.

7   You can filed yours ECF.  I don't know whether Ms. Memblatt

8   is going to have individual oppositions or whether she's

9   going to do one joint opposition to everybody's motion.

10          MS. MEMBLATT:  It would be more likely that I

11  would do joint.

12          THE COURT:  I understand that, and that's why I

13  was saying it that way.  Yes, somebody has a question.

14          MS. UNGER:  Just one question.  I anticipate that

15  one of our exhibits, if not the only exhibit --

16          THE COURT:  You're not going to have any exhibits.

17  Why?  This is a motion to dismiss, it's not a motion for

18  summary judgment.  If you have exhibits, it has to be

19  converted, and we're not doing summary judgment.  We're

20  doing motion in lieu of answer.  You can use anything that

21  she has in her complaint -- that's attached by reference,

22  that's a pleading.  If you use anything outside the

23  pleadings, you are out of the box for 12(b) relief and

24  you're put over into summary judgment, at which point there

25  will be discovery.

1          MS. UNGER:  No, I was referring to the complaint,

2    your Honor.

3          THE COURT:  Okay.

4          MS. MEMBLATT:  Your Honor --

5          THE COURT:  Wait.  I'm going down the list.  I'll

6    get back to you.

7          MS. MEMBLATT:  Sorry.

8          MR. SPERES:  Your Honor, my only question -- when

9    I said November 21st, I assume I would be serving it --

10   that's a Monday.  I'd have to serve it on the previous

11   Friday then, in order for Ms. Memblatt to have it on the

12   21st.

13         THE COURT:  You have to have it delivered to her.

14   You have messengers.  You can have it delivered to her.

15         MR. SPERES:  Okay.

16         THE COURT:  She's arguing with me about that date,

17   so I don't think it's a good thing for you to now --

18         MR. SPERES:  I'm sorry.  When I said it, I just

19   assumed that that would be the date that I would serve by

20   overnight mail, so she would have it on the 22nd.  But if you

21   want her to have it on the 21st --

22         THE COURT:  Well, because you are requesting

23   additional time now, I think having it in her hand by the

24   end of that day is what you need to do, with some proof of

25   that.

1          Yes, Ms. Memblatt.

2          MS. MEMBLATT:  When you were addressing before the

3   matter involving discovery and the initial order that you

4   had issued, I am not aware of any point before you issued

5   that order that the defendants had directly addressed any

6   application for staying discovery.  It is my impression that

7   what happened was that once you issued your order, I did the

8   steps that I felt obligated to do by the terms of your

9   order, and they simply refused to comply with it.

10          And it was not until I wrote a letter to your

11   Honor to advise your Honor of their failure to comply with

12   it that they did anything to request any kind of stay with

13   respect to the discovery.  And even then, it was only Mr.

14   Quinn who did so.  So I would just like to clarify with your

15   Honor; is it appropriate for the defendants, in the event

16   that they disagree with the terms of an order that you have

17   issued, to simply disregard it.  Or, your Honor, are they

18   required to --

19          THE COURT:  No, of course not, Ms. Memblatt.  But

20   I do think that there was a misunderstanding because again,

21   in the district court, in the federal system, you're paired

22   up with a district judge and a magistrate judge.  I was

23   alerted that there was some application to Judge Dearie.  I

24   hadn't seen the application to Judge Dearie.

25          So again, this happened also back in April, where

1    Judge Dearie had relieved the defendants of the obligation I

2    had scheduled the defendants to respond to the complaint.

3    So we were working not at cross-purposes but, unfortunately,

4    we were both issuing orders on the same case because the

5    application was being made to Judge Dearie.

6            Everything is electronically filed in the Court,

7    so whenever I'm the assigned magistrate judge on a case,

8    even though it may have been made to Judge Dearie, I am

9    getting an electronic notice of it.  Generally speaking, the

10   litigants appearing in the federal district court in

11   Brooklyn know that pretrial matters are referred to the

12   magistrate judges.  So it's somewhat automatic that the

13   magistrate judge picks up the application on the electronic

14   bounce and deals with it.

15           In this particular case, for whatever reason,

16   Judge Dearie was likewise picking up the bounce, and that's

17   why I think there was some confusion about who was handling

18   the case.  No, they cannot just refuse to comply with an

19   order if they disagree.  I think that Mr. Renfroe's request

20   or Mr. Quinn's request --

21           MS. MEMBLATT:  Mr. Quinn's.

22           THE COURT:  -- was the test balloon, perhaps, that

23   the defendants were sending up to see what their obligations

24   were going to be.  They didn't necessarily, all three

25   attorney groups at the table make the request.  But when one

1  was relieved of the obligation, I'm sure that that was

2  shared with the others.

3        At this point in time, because there is a motion

4  scheduled, we're not going backwards to readdress those

5  questions.  There is nothing that's going to --

6        MS. MEMBLATT:  I just meant in terms of the

7  future, since they've now --

8        THE COURT:  Discovery is going to be stayed until

9  the conclusion and adjudication of the motion.

10       MS. MEMBLATT:  Yes, Judge.  What I really meant

11  was in terms of the issuance of an order.  That's what I'm

12  speaking of.  To me, even if they thought their motions to

13  -- their writings to dismiss should have adequately

14  addressed that or stayed that, yet they've received the

15  order of a magistrate judge, which was quite clear and

16  direct.

17       So it was my impression that the appropriate way

18  to proceed would have been to raise that immediately with

19  your Honor, rather than simply taking the position that they

20  had no such obligation and waiting until I brought it to the

21  Court's attention.

22       THE COURT:  Ms. Memblatt, I wouldn't disagree with

23  you.  But as I said, I'm very pragmatic.  We have enough to

24  deal with and we're moving forward.  So I would agree with

25  you that yes, you get an order of the Court, you obey the

1   order or you file something saying why you believe you're

2   not going to have to obey the order.  But I'll chalk it up

3   because I try to give everybody in the first instance the

4   benefit of the doubt that there was some confusion about who

5   was overseeing the case, whether it was Judge Dearie or it

6   was me.  I think everybody is now on notice that I'm

7   overseeing all pretrial, and so if there are any requests

8   that affect pretrial --

9            What that means, however, is that the motion is

10  going to go to Judge Dearie.  Judge Dearie has the option of

11  referring it to me, but it's not automatic because it's a

12  dispositive motion, which, if granted, would dispose of the

13  case.  This is under 28 United States Code 636 that sets up

14  the duties of the magistrate judge.

15           Under 636(b), I can only deal with dispositive

16  motions as a referral from a district judge on report and

17  recommendation.  That's the system.  I deal with all

18  pretrial matters under 636(a).  You don't get any choice and

19  I get to rule on any pretrial matters without it going to

20  the district judge, okay?

21           MS. MEMBLATT:  Thank you, Judge.

22           THE COURT:  We have a schedule now set.  Everybody

23  understands that discovery will be stayed until after the

24  motions have been decided.  Everybody understands that it is

25  a motion in lieu of an answer under 12(b), so it is the four

1   corners of the pleadings.  We do not refer to matters

2   outside the pleadings.  So yes, you do take everything Ms.

3   Memblatt says as true and the arguments have to be legal

4   arguments as to why that would fail to state a claim under

5   the statute.

6          There is nothing further that I need to do today,

7   except to make sure that everybody is clear that Ms.

8   Memblatt is entitled to serve one joint opposition.  That

9   opposition will be sent to Mr. Quinn's office, to Mr. Speres

10  and to Ms. Egelfeld for -- both of you are there for the

11  same defendants.

12         MS. UNGER:  Yes.

13         THE COURT:  But when you're sending to Mr. Speres,

14  you need to send him the original and two copies.  Everybody

15  else just gets one copy.  He gets an original and two copies

16  because he is going to file the fully briefed motion with

17  the Court on January 12th, which will be your original.  One

18  copy of yours as a courtesy copy to Judge Dearie's chambers.

19  You do not file with the Court on the December 26th date.

20  You just have to make sure that he has in hand your original

21  and two copies and that the other defendants are served.

22         MS. MEMBLATT:  Okay.  So I just check with the

23  clerk's office to make sure that he filed everything,

24  including my original; is that it?

25         THE COURT:  In January.

1        MS. MEMBLATT:  In January, when he files

2   everything.

3        THE COURT:  Exactly.  It's the fully briefed

4   motion.  We don't look at it until it's fully briefed.

5        MS. MEMBLATT:  Thank you.

6        THE COURT:  What is the problem at the defense

7   table?

8        MR. SPERES:  Your Honor, the 26th is the recognized

9   holiday because Christmas falls on the 25th.  Therefore,

10  Monday, the office is closed.

11       THE COURT:  So the 27th.

12       MR. SPERES:  Martin Luther King day, is that the

13  12th or is that the following week?

14       THE COURT:  I'm looking.

15       MS. MEMBLATT:  That's January 17th.

16       MR. SPERES:  Okay.

17       THE COURT:  It's the 16th this year, Ms. Memblatt.

18  You were on 2005, I bet.

19       MS. MEMBLATT:  Yes, I'm sorry, your Honor.

20       THE COURT:  Because this year, Martin Luther King

21  is the 16th.  So just to reiterate, November 21st, the papers

22  will be served on Ms. Memblatt from all defendants.  She

23  will get them on that date.  On December 27th, Ms. Memblatt,

24  you will have served the original and two copies to Mr.

25  Speres's office.  You can do it by mail, as long as it will

1   arrive on the 27th, in both Mr. Quinn and Ms. Egelfeld's

2   office.   Then on January 12th, 2005, Mr. Speres will file the

3   fully briefed motion.

4          The defendants that are not filing their fully

5   briefed can file it electronically on that date, because

6   he's going to have Ms. Memblatt's papers.   They will take

7   care of it.   I know your office is quick to do that because

8   they have more than one pro se litigant on the other side.

9          In other words, Ms. Memblatt, this is a fully ECF

10  court, an electronic case filing court.   Where there are

11  attorneys on both sides, attorneys have to register for ECF

12  and everything is done electronically.   It's turning to

13  paperless.   The exception to that is the pro se docket.

14  Since pro se litigants often can't file things

15  electronically, if it's a pro se case, it's outside of the

16  electronic filing rule.

17         So the attorneys, meaning Ms. Egelfeld and Mr.

18  Quinn, can file electronically on that date.   She must be

19  served still with the reply but you can file it on that

20  date.   Mr. Speres is going to take the fully bundled motion,

21  which will have Ms. Memblatt's opposition, and have it filed

22  by the 12th of January.

23         MR. SPERES:   Your Honor, just to clarify one

24  thing.   Do you want me to file it ECF by scanning or just

25  file her original?

1    THE COURT:  Whatever your office does, because
2  this is not the only pro se case in your office.  Again, you
3  need to have the courtesy copy -- she's going to give it to
4  you -- delivered to Judge Dearie.
5    MR. SPERES:  Not a problem.
6    THE COURT:  But as far as whatever they do,
7  whether they scan it in or they deliver it to the Court for
8  the Court to scan in, I can't tell you, okay?
9    MR. SPERES:  A lot of times it depends on the
10  judge.  That's why I asked.
11    THE COURT:  Well, everybody is now electronic
12  filing in this district.  If they have the capacity to scan
13  everything in in your office, so be it.  But I would imagine
14  that you're going to file the original in hard copy and that
15  the Court is going to scan it in.  That's what I think is
16  going to happen.
17    MS. MEMBLATT:  I'm giving Mr. Speres the original
18  and two copies.  I'm giving Ms. Egelfeld one.  I'm giving
19  Mr. Quinn also one copy.
20    THE COURT:  Exactly.
21    MS. MEMBLATT:  And that's it.
22    THE COURT:  And the one that you send the original
23  to Mr. Speres will just have your proof of service on all
24  the defendants attached to that one, and then the Court will
25  know that everybody has done their business, okay?

1              Is there anything else that I need to address

2    today, Ms. Memblatt?

3              MS. MEMBLATT:  No, your Honor, thank you very

4    much.

5              THE COURT:  Is there anything further today, Ms.

6    Egelfeld?

7              MS. EGELFELD:  No.

8              THE COURT:  Anything further, Mr. Speres?

9              MR. SPERES:  Nothing, your Honor.

10             THE COURT:  Anything further, Mr. Quinn?

11             MR. QUINN:  No, thank you, your Honor.

12             THE COURT:  Then this matter is adjourned.  Thank

13   you.

14             * * * * * * * * * * * * *

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct transcript

19 from the electronic sound recording of the proceedings in

20 the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    November 14, 2005