UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JUDITH B. MEMBLATT,

                          Plaintiff,

          -against-                              05-CV-1021
                                                (RJD)(LB)

JAIME A. RIOS, Associate Jusitce,
Appellate Term, Supreme Court, State
of New York, 2nd and 11th Judicial
Districts, STEVEN W. FISHER, Associate
Justice, Appellate Division, Supreme
Court, State of New York, 2nd Department,
JONATHAN LIPPMAN, Chief Administrative
Judge of the Courts of the State of
New York, LAUREN DeSOLE, Director of
the Division of Human Resources, New
York State Unified Court System, Office
of Court Administration, ANTHONY
D'ANGELIS, Chief Clerk, Supreme Court
State of New York, Queens County,
ROBERT W. GARDNER,  Major of Officers,
Supreme Court, State of New York,
SANDRA NEWSOME, Secretary to Judge,
Supreme Court, State of New York,
HEIDI HIGGINS, Secretary to Judge,
Supreme Court, State of New York,
KAREN KOSLOWITZ, Deputy Borough
President, County of Queens, City of
New York, THOMAS J. MANTON, GERARD
J. SWEENEY and MICHAEL H. REICH,

                          Defendants.
----------------------------------------X

**STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THEIR MOTION TO DISMISS
THE COMPLAINT**

                         ELIOT SPITZER
                         Attorney General of the
                          State of New York
                         Attorney for State defendants
                         120 Broadway
                         New York, New York 10271
                         (212) 416-8567

CONSTANTINE A. SPERES
Assistant Attorney General
 of Counsel

EDWARD YENNOCK
Legal Intern

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I    THE STANDARD OF REVIEW UNDER WHICH
           THIS COURT MUST EXAMINE THE SUFFICIENCY
           OF THE COMPLAINT, WHILE LIBERAL, IS NOT
           NEARLY AS LIBERAL AS THE TOOTHLESS REVIEW
           PLAINTIFF SUGGESTS . . . . . . . . . . . . . . 2

      A.   Despite Plaintiff's Mantra That "It
           May be Inferred...", the Court Need
           Not Accept as True the Litany of
           Unwarranted "Factual" Inferences Proffered
           by Plaintiff . . . . . . . . . . . . . . . . . 3

      B.   Despite Plaintiff's Argument to the
           Contrary, Civil Conspiracy Claims are
           Subject to a Heightened Pleading Standard . . . . 6

      C.   Plaintiff, as an Attorney, is Not Entitled
           to the Leniency Afforded Other
           Pro Se Litigants . . . . . . . . . . . . . . . 10

POINT II   PLAINTIFF FAILS TO STATE A
           POLITICAL TERMINATION CLAIM . . . . . . . . . 10

POINT III  PLAINTIFF FAILS TO STATE A FIRST
           AMENDMENT RETALIATION CLAIM . . . . . . . . . 12

POINT IV   PLAINTIFF FAILS TO DEMONSTRATE A
           HOSTILE WORK ENVIRONMENT . . . . . . . . . . . 14

CONCLUSION     . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Adickes v. S.H. Kress & Co.,
    398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . 9

Balogh v. Charron,
    855 F.2d 356 (6th Cir. 1998) . . . . . . . . . . . . . 11

Benjamin v. Brookhaven Science Associates, LLC,
    387 F. Supp.2d 146 (E.D.N.Y. 2005) . . . . . . . . . . 16

Branti v. Finkel,
    445 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . 11

Ciambriello v. County of Nassau,
    292 F.3d 307 (2d Cir. 2002) . . . . . . . . . . . . . . 7

Clark County School Dist. v. Breeden,
    532 U.S. 268 (2001) . . . . . . . . . . . . . . . . . . 13

Cohen v. Litt,
    906 F. Supp. 957 (S.D.N.Y. 1995) . . . . . . . . . . . 3

Collins v. City of New York,
    2005 U.S. Dist. LEXIS 38395 (E.D.N.Y. Dec. 21, 2005) . . . 7

Davidson v. Garry,
    956 F. Supp. 265 (E.D.N.Y. 1996) . . . . . . . . . . . 10

Delta Airlines v. Kramarsky,
    650 F.2d 1287 (2d Cir. 1981) . . . . . . . . . . . . . 3

Doug Grant, Inc. v. Greate Bay Casino Corp.,
    232 F.3d 173 (3d. Cir. 2000) . . . . . . . . . . . . . 3, 4

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 2005) . . . . . . . . . . . . . . 7

Elrod v. Burns,
    327 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . 11

Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP,
    332 F. Supp.2d 592 (S.D.N.Y. 2004) . . . . . . . . . . 3

**CASES**                                                             **PAGE**

Fox v. City of New York,
    2004 U.S. Dist. LEXIS 6844 (S.D.N.Y. 2004) . . . . . . 6, 7

Furlong v. Long Island Coll. Hosp.,
    710 F.2d 922 (2d Cir. 1983) . . . . . . . . . . . . . . 3

Giaccio v. City of New York,
    2005 U.S. Dist. LEXIS 642 (S.D.N.Y. Jan. 19, 2005) . . . 3

Gregory v. Daly,
    243 F.3d 687 (2d Cir. 2001) . . . . . . . . . . . . 3, 15

Hughes v. Rowe,
    449 U.S. 5 (1980) . . . . . . . . . . . . . . . . . . 10

In re Martin-Trigona,
    763 F.2d 503 (2d Cir. 1985) . . . . . . . . . . . . . 10

In re Sunstar Securities Healthcare Litigation,
    173 F. Supp.2d 1315 (M.D. Fla 2001) . . . . . . . . . . 4

Konits v. Valley Stream Central High School Dist.,
    394 F.3d 121 (2d Cir. 2005) . . . . . . . . . . . . 13, 14

Kramer v. City of New York,
    2004 U.S. Dist. LEXIS 21914 (S.D.N.Y Nov. 1, 2004) . . . 9

Lynk v. Henderson,
    2000 U.S. Dist. LEXIS 1496 (S.D.N.Y. Feb. 15, 2000) . . . 13

Matter of Raab,
    100 N.Y.2d 305 (2003) . . . . . . . . . . . . . . . . 11

Morris v. Lindau,
    196 F.3d 102 (2d Cir. 1999) . . . . . . . . . . . . . 13

Patel v. Searles,
    305 F.3d 130 (2d. Cir. 2002) . . . . . . . . . . . . . 15

Payne v. Pauley,
    337 F.3d 767 (7th Cir. 2003) . . . . . . . . . . . . . 4

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998) . . . . . . . . . . . . . 16

**CASES**                                                              **PAGE**

Raniola v. Bratton,
     243 F.3d 610 (2d Cir. 2001) . . . . . . . . . . . . . 16, 17

Romer v. Morgenthau,
     119 F. Supp.2d 346 (S.D.N.Y. 2004) . . . . . . . . . . 8

Sanchez v. Fischer,
     2005 U.S. Dist. LEXIS 7730 (S.D.N.Y. Apr. 29, 2005) . . . 3

Stover v. Martinez,
     382 F.3d 1064 (10th Cir. 2004) . . . . . . . . . . . 13

Swierkiewicz v. Sorema N.A.,
     534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . 6, 7

Sylvester v. City of New York,
     385 F. Supp.2d 431 (S.D.N.Y. 2005) . . . . . . . . . . 7

Traguth v. Zuck,
     710 F.2d 90 (2d. Cir. 1983) . . . . . . . . . . . . . 10

Vezzetti v. Pellegrini,
     22 F.3d 483 (2d Cir. 1994) . . . . . . . . . . . . . 11

Visser v. Packer Eng'g Assoc.,
     924 F.2d 655 (7th Cir. 1991) . . . . . . . . . . . . 4

Walker v. Jastremski,
     430 F.3d 560 (2d Cir. 2005) . . . . . . . . . . . . . 7

Wechsler v. R D Management Corp.,
     861 F. Supp. 1153 (E.D.N.Y. 1994) . . . . . . . . . . 10

Yusuf v. Vassar College,
     35 F.3d 709 (2d Cir. 1994) . . . . . . . . . . . . . 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
JUDITH B. MEMBLATT,

               Plaintiff,

                                  05-CV-1021

     -against-                   (RJD)(LB)


JAIME A. RIOS, Associate Jusitce,
Appellate Term, Supreme Court, State
of New York, 2nd and 11th Judicial
Districts, STEVEN W. FISHER, Associate
Justice, Appellate Division, Supreme
Court, State of New York, 2nd Department,
JONATHAN LIPPMAN, Chief Administrative
Judge of the Courts of the State of
New York, LAUREN DeSOLE, Director of
the Division of Human Resources, New
York State Unified Court System, Office
of Court Administration, ANTHONY
D'ANGELIS, Chief Clerk, Supreme Court
State of New York, Queens County,
ROBERT W. GARDNER,  Major of Officers,
Supreme Court, State of New York,
SANDRA NEWSOME, Secretary to Judge,
Supreme Court, State of New York,
HEIDI HIGGINS, Secretary to Judge,
Supreme Court, State of New York,
KAREN KOSLOWITZ, Deputy Borough
President, County of Queens, City of
New York, THOMAS J. MANTON, GERARD
J. SWEENEY and MICHAEL H. REICH,

               Defendants.

---------------------------------------X

**STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT**

### <u>Preliminary Statement</u>

      State defendants submit this reply memorandum of law in

further support of their motion to dismiss the complaint.  In

opposition to the motion to dismiss, plaintiff submits a one

hundred and thirty two (132) page memorandum of law containing misstatements of law and replete with illogical and unreasonable inferences masquerading as facts. If anything, plaintiff's memorandum of law highlights the ineluctable conclusion that she is not entitled to recovery under any of the legal theories she proffers. Therefore, for the reasons set forth below and in State defendants' moving memorandum of law, State defendants are entitled to an order granting their motion to dismiss in its entirety.

### STATEMENT OF FACTS

This Court is respectfully referred to State defendants' moving memorandum of law, dated November 21, 2005, for a full statement of the pertinent facts.

### ARGUMENT

### POINT I

**THE STANDARD OF REVIEW UNDER WHICH THIS COURT MUST EXAMINE THE SUFFICIENCY OF THE COMPLAINT, WHILE LIBERAL, IS NOT NEARLY AS LIBERAL AS THE TOOTHLESS REVIEW PLAINTIFF SUGGESTS**

Plaintiff misconstrues the standards under which her complaint must be evaluated in order to withstand a motion to dismiss. As evinced by the contents of her complaint and in the assertions made in her Memorandum of Law, plaintiff's standard of review arguments are misguided in three distinct ways.

2

**A.    Despite Plaintiff's Mantra That "It May be Inferred...", the Court Need Not Accept as True the Litany of Unwarranted "Factual" Inferences Proffered by Plaintiff**

First, and most broadly, while the factual allegations in a complaint must generally be accepted as true in the context of a Fed. R. Civ. P. 12(b)(6) motion, the court "need not assume the truth of conclusions of law or *unwarranted factual inferences* that have been pleaded." <u>Delta Airlines v. Kramarsky</u>, 650 F.2d 1287, 1298 (2d Cir. 1981); <u>see also</u> <u>Gregory v. Daly</u>, 243 F.3d 687, 692 (2d Cir. 2001), <u>citing</u> <u>Yusuf v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir. 1994) ("Naked assertions" without supporting facts, are insufficient to state a claim.); <u>Furlong v. Long Island Coll. Hosp.</u>, 710 F.2d 922, 927 (2d Cir. 1983) (Federal pleading requirements do "not permit conclusory statements to substitute for minimally sufficient factual allegations."); <u>Sanchez v. Fischer</u>, 2005 U.S. Dist. LEXIS 7730, at *9-10 (S.D.N.Y. Apr. 29, 2005) (complaint consisting of nothing more than naked assertion fails to state claim under Rule 12(b)(6)); <u>Giaccio v. City of New York</u>, 2005 U.S. Dist. LEXIS 642, at *5 (S.D.N.Y. Jan. 19, 2005) ("mere conclusions of law or unwarranted deductions need not be accepted"); <u>Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP</u>, 332 F. Supp.2d 592, 596 (S.D.N.Y. 2004) (same); <u>Cohen v. Litt</u>, 906 F. Supp. 957, 961 (S.D.N.Y. 1995) ("a court need not accept a complaint's legal conclusions and unwarranted factual deductions"); <u>Doug Grant, Inc. v. Greate Bay Casino Corp.</u>, 232 F.3d 173, 184 (3d.

3

Cir. 2000) ("[T]he court need not accept as true unsupported conclusions and unwarranted inferences.").

The court need not and should not construe Fed R. Civ. P. 8(a) so as to allow plaintiffs to "heap inference upon inference to support their constrained theory," but rather should only "accept those inferences raised from the factual allegations that are both reasonable and strong." In re Sunstar Securities Healthcare Litigation, 173 F. Supp.2d 1315, 1321 (M.D. Fla 2001). While plaintiff's allegations based upon "personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, hunches, intuitions, or rumors.'" Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (quoting Visser v. Packer Eng'q Assoc., 924 F.2d 655, 659 (7th Cir. 1991).

While the unwarranted inferences and assertions relied upon by plaintiff are too numerous to identify, several of the more egregious include:

> (1) ". . . it may be inferred that defendants Rios and Newsome believed that they could exploit the 'private' defendants' anger at plaintiff's involvement in Katz's campaign to obtain the approval of those defendants for defendant Rios to terminate plaintiff's employment. It may be inferred that defendants Rios and Newsome adopted [in May 1998] the 'private' defendants' political animus against plaintiff because it appeared to create an opportunity for defendant Rios to request such approval . . .." (Plaintiff's Memorandum at 25);

> (2) ". . . it may be inferred . . . that the reason for that very lengthy delay between the formation of the agreement [presumably in September 2002] that plaintiff

4

would be terminated and the actual termination was that defendants also agreed that a pretext for plaintiff's firing would be created, and, that, in the interim, they orchestrated the fabrication of such a pretext." (Id. at 30);

(3) ". . . it may be inferred that defendants agreed to orchestrate a pretext for plaintiff to be discharged because they were extremely concerned about rulings that had been made by the Second Circuit in [Sheppard v. Beerman]." (Id. at 30);

(4) ". . . it may be inferred that defendants' agreed that a pretext should be established prior to plaintiff's predetermined discharge, that they engaged in a highly coordinated effort to manufacture such pretext . . . and that in doing so they were guided by a desire to circumvent the effect of the Second Circuit's rulings in [Sheppard v. Beerman]." (Id. at 32);

(5) "In light of the surrounding circumstances [presumably OCA's legal position rejected by the Second Circuit in Sheppard v. Beerman] . . . it may be inferred that OCA was coaching defendant Rios regarding the orchestration of a pretext for plaintiff's predetermined discharge . . .." (Id. at 37);

(6) ". . . it may be inferred [from the involvement of State defendant Higgins] that the 'private' defendants and the 'state' defendants had reached an agreement that plaintiff would be discharged and that they would jointly orchestrate a pretext for the discharge." (Id. at 38);

(7) ". . . it may be inferred that defendant Higgins was included in the coordinated effort [presumably to terminate plaintiff] because she worked in close proximity to defendant Rios' chambers and she also could serve as a link between the other 'state' defendants and the 'private' defendants due to her familial relationship with defendant Koslowitz . . .." (Id. at 38);

(8) ". . . it may be inferred that [ADA Kenneth] Holder came to defendant Rios' chambers [on June 19, 2003] while defendant Rios was involved in creating a pretext for the termination of plaintiff's employment because defendant Rios was concerned that when he discharged plaintiff, she might make public statements about his relationship with [ADA Meryl] Lutsky." (Id. at 39-40);

(9) ". . . it may be inferred that defendant Lippman was contacting defendant Rios [on October 24, 2003] because defendant Lippman was personally involved in the orchestration of a pretext for plaintiff's predetermined discharge . . .." (<u>Id</u>. at 57); and

(10) "It may be inferred that the answer to the question, 'Why are all of these people [presumably the defendants] involved in this case?' is that defendant Rios decided to involve them in his employment relationship with plaintiff and they agreed to become part of the plan." (<u>Id</u>. at 59).

Plaintiff's complaint is essentially a series of unwarranted deductions and conclusions based upon hunches and unreasonable and unwarranted inferences, all masquerading as factual allegations which do not satisfy the pleading requirements of Fed. R. Civ. P. 8(a) and need not be considered by this Court. An illogical and attenuated chain of inferences, albeit one wrought in painstaking, articulate detail, merits no favorable consideration by the Court.

**B.   Despite Plaintiff's Argument to the Contrary, Civil Conspiracy Claims are Subject to a Heightened Pleading Standard**

Plaintiff argues that "complaints in 42 U.S.C. 1983 actions (including but not limited to those raising conspiracy claims) are not subject to heightened pleading standards." Plaintiff's Memorandum at 91. In support of this proposition, plaintiff cites a single case within the Second Circuit, <u>Fox v. City of New York</u>, 2004 U.S. Dist. LEXIS 6844 (S.D.N.Y. 2004). In <u>Fox</u>, Magistrate Judge Maas addressed the applicability of the United States Supreme Court's holding in <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), wherein the court announced that the

6

simplified pleading requirement of Fed. R. Civ. P. 8(a) "applies generally to all civil actions," to claims of civil conspiracy. Fox, 2004 U.S. Dist. LEXIS 6844, at *22-24.  Magistrate Judge Maas, citing cases from the Seventh Circuit and the District of New Jersey, held that while the allegations of conspiracy before the court "clearly would be inadequate under the prior case law in this Circuit," the plaintiff had adequately pleaded a § 1983 conspiracy in light of Swierkiewicz. Id at 23-24.

Fox, however, is an anomalous decision within the Second Circuit, as it eschews the well-established principle that something more is required of a complainant in a civil conspiracy claim than would suffice in most other contexts.  See Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) ("[G]eneral allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).  See also Walker v. Jastremski, 430 F.3d 560, n. 5 (2d Cir. 2005); Collins v. City of New York, 2005 U.S. Dist. LEXIS 38395, at *4-5 (E.D.N.Y. Dec. 21, 2005); Sylvester v. City of New York, 385 F. Supp. 2d 431, 446 (S.D.N.Y. 2005).

In any event, plaintiff has clearly failed to meet any civil conspiracy pleading requirement.  In its dismissal of a §

7

1983 conspiracy complaint in <u>Romer v. Morgenthau</u>, 119 F. Supp. 2d 346 (S.D.N.Y. 2004), an action with deficiencies quite similar to those of the instant complaint, the Court noted:

> [Plaintiff's Section 1983 conspiracy] claims are too general and conclusory to sufficiently plead the meeting of the minds requirement. *Romer repeatedly alleges that Mauskopf's actions took place under direction of Morgenthau, and that DOCS Defendants' actions were carried out both at the "behest" and "urged and influenced" by DA Defendants.* Romer's conspiracy allegations cannot be sustained as sufficiently specific merely by his stating the means by which defendants may have communicated with one another over the years of his incarceration. While Romer has cited defendants' furtherance of their alleged conspiracy through practically every conceivable means of communication, this recitation *suggests nothing supporting an inference that any of this alleged communication was centered on, or led to a meeting of the minds among defendants about denying Romer a cognizable constitutional right.* Absent allegations of facts leading to a reasonable inference that defendants conspirationally conferred with a purpose of actually depriving Romer of any recognized constitutional right, he cannot state a sustainable conspiracy claim.

<u>Romer</u>, 119 F. Supp. 2d. at 364 (emphasis added).

Here, plaintiff's basis for pleading that the defendants conspired to accomplish her "predetermined discharge" (Plaintiff's Memorandum, <u>passim</u>) are the unreasonable and unwarranted inferences which this Court cannot accept. Additionally, the allegations plaintiff relies upon in attempting to plead conspiracy, including: (1) State defendants DeSole and D'Angelis' being present when

Justice Rios asked plaintiff to take a leave of absence (see complaint ¶ 168); (2) State defendant Gardner's being present when Justice Rios terminated plaintiff (see complaint ¶ 206); (3) Justices Fisher and Rios' meeting on September 30, 2003 and November 25, 2003 (see complaint ¶¶ 145, 157); and (4) Justices Lippman and Rios' meeting on June 25, 2003 (see complaint ¶ 125) are clearly insufficient.

Finally, despite misconstruing the appropriate Second Circuit pleading standard applied in civil conspiracy claims, plaintiff correctly notes that the pleading of direct evidence is not necessarily required, insofar as Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) tends to establish that a civil conspiracy may ultimately be established through circumstantial evidence. This evidentiary rule, however, fails to vindicate plaintiff's complaint.  While courts acknowledge that civil conspiracy claims may be grounded in circumstantial evidence, this does not compel courts to countenance for purposes of a Fed. R. Civ. P. 12(b)(6) motion the type of speculative, attenuated, and conclusory allegations upon which plaintiff's conspiracy theories rest in the instant case. See, e.g., Kramer v. City of New York, 2004 U.S. Dist. LEXIS 21914, at *21 (S.D.N.Y Nov. 1, 2004) (holding that while Section 1983 conspiracies "are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence, conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")(internal citations omitted).

## C.   Plaintiff, as an Attorney, is Not Entitled to the Leniency Afforded Other Pro Se Litigants

Plaintiff's suggestion that her complaint is entitled to "the most lenient standards" contravenes the critical justification for deferential review of pleadings submitted pro se. "[P]apers submitted by pro se litigants must be construed liberally *in deference to their lack of training in the law*." Wechsler v. R D Management Corp., 861 F. Supp. 1153, 1157 (E.D.N.Y. 1994) (emphasis added) (citing Hughes v. Rowe, 449 U.S. 5 (1980)); see also Traguth v. Zuck, 710 F.2d 90, 95 (2d. Cir. 1983).  As such, it is well settled that attorneys appearing pro se, such as plaintiff, must receive no special allowances from the court.  In re Martin-Trigona, 763 F.2d 503, 505 (2d Cir. 1985); see also Davidson v. Garry, 956 F. Supp. 265, 266 (E.D.N.Y. 1996) ("[A]ttorneys who represent themselves are not held to a lesser standard than attorneys who represent others.).

### POINT II

### PLAINTIFF FAILS TO STATE A POLITICAL TERMINATION CLAIM

In responding to State defendants' argument that she fails to state a political termination claim, plaintiff does not dispute that political affiliation is a permissible employment criterion for certain policy making and/or confidential positions.

Nor does she dispute that her position as a law clerk is a position susceptible to discharge for reasons related to political patronage because she cannot.

Rather, plaintiff completely misstates State defendants' argument and then relying on the Rules of the Chief Administrator of the Courts governing Judicial Conduct and <u>Matter of Raab</u>, 100 N.Y.2d 305 (2003) claims the argument is untenable and disgraceful. However, nowhere in their papers do State defendants argue that "judges should be able to retaliate against their law clerks for reasons of partisan politics" (Plaintiff's Memorandum at 103), as plaintiff claims. Nor does State defendants' argument run afoul of the rules governing Judicial Conduct or the Attorney General's position in the amicus brief submitted in <u>Matter of Raab</u>.

What State defendants argue, and what plaintiff cannot dispute, is that accepting her allegations as true - - that her discharge was politically motivated - - she fails to state a claim under federal law because political affiliation is a permissible employment criterion for certain positions including that of plaintiff. <u>See</u> State defendants' Memorandum at 19-22; <u>Branti v. Finkel</u>, 445 U.S. 507 (1980); <u>Elrod v. Burns</u>, 327 U.S. 347 (1976); <u>Vezzetti v. Pellegrini</u>, 22 F.3d 483 (2d Cir. 1994); <u>Balogh v. Charron</u>, 855 F.2d 356 (6th Cir. 1998). Accordingly, plaintiff fails to state a political termination claim.

## POINT III

**PLAINTIFF FAILS TO STATE A FIRST AMENDMENT
RETALIATION CLAIM**

In responding to State defendants' argument regarding her
failure to state a First Amendment retaliation claim, plaintiff
requests that this Court take judicial notice "of the intense press
coverage" her First Amendment speech has garnered.  Plaintiff's
Memorandum at 110.  Plaintiff cites to a December 13, 2004
Eyewitness News report; a November 14, 2005 Eyewitness News report;
and articles published by major newspapers on November 16, 17 and
20, 2005 to support her contention that her speech is a matter of
public concern.  Plaintiff's response misses the point.

Contrary to plaintiff's claim, State defendants have not
argued that speech alleging judicial misconduct is not a matter of
public concern.  Rather, State defendants argue that plaintiff did
not complain of the alleged judicial misconduct until after she was
terminated and, therefore, cannot rely upon those complaints to
establish a First Amendment retaliation claim retroactively.  On
April 19, 2004, Justice Rios terminated plaintiff's employment.  On
April 22, 2004, plaintiff wrote letters to Justices Rios and Fisher
threatening litigation.  Then on April 29, 2004, May 4, 2004 and
May 28, 2004, plaintiff filed complaints with the Commission on
Judicial Conduct.  Clearly, plaintiff cannot base her First
Amendment retaliation claim on post-termination speech.  <u>See</u> State
defendants' Memorandum at 26-27.

Additionally, to the extent plaintiff seeks to infer that her termination or any other the alleged adverse employment actions she suffered were in retaliation for statements she made to ADA Meryl Lutsky in 1996, she fails.  While plaintiff claims that Justice Rios was aware of these statements in June 1998, she was not terminated until April 2004, six years later, and did not suffer any alleged adverse employment actions until late September 2002, over four years later.  Clearly, the length of time between the alleged speech and the alleged retaliation is too long to support plaintiff's claim.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (action taken 20 months after protected activity suggests, by itself, no causality at all); Morris v. Lindau, 196 F.3d 102, 113 (2d Cir. 1999) (no inference of causation is justified when protected activity and the retaliation more than two years apart); Lynk v. Henderson, 2000 U.S. Dist. LEXIS 1496, at *4 (S.D.N.Y. Feb. 15, 2000) (three years between EEO complaint and reprimand too great to show causal relationship); Stover v. Martinez 382 F.3d 1064, 1074 (10th Cir. 2004) (lapse of two years between action and retaliation too attenuated).

Finally, in claiming her speech concerning the alleged religious and racial discrimination is a matter of public concern, plaintiff misstates the relevant case law.  Contrary to plaintiff's claim, Konits v. Valley Stream Central High School Dist., 394 F.3d 121 (2d Cir. 2005) does not stand for the proposition that

complaints of discrimination personal in nature are protected by the First Amendment.  Rather, <u>Konits</u> stands for the proposition that "any use of state authority to retaliate against those who speak out against discrimination suffered by others, including witnesses or potential witnesses in proceedings addressing discrimination claims, can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment." <u>Id</u>. at 125.  Again, State defendants do not dispute that complaints of widespread discrimination are matters of public concern.  What State defendants argue is that expressing dissatisfaction with working conditions, as plaintiff did, is simply not speech on matters of public concern.  <u>See</u> State defendants' Memorandum at 24-25.

Accordingly, plaintiff's claim that her termination was in retaliation for the exercise of her First Amendment Rights fails.

<b><u>POINT IV</u></b>

**PLAINTIFF FAILS TO DEMONSTRATE A HOSTILE WORK ENVIRONMENT**

As an initial matter, plaintiff's characterization of the State defendants' legal contentions regarding hostile work environment is patently false and distorts the issue.  Far from asserting that the events described in the complaint should be considered in isolation (Plaintiff's Memorandum at 120), State defendants contend that when the alleged events are properly viewed

14

as a whole, plaintiff fails to state a claim as a matter of law.[1]

Plaintiff argues that for purposes of this motion to dismiss, the Court may only inquire whether "minimal notice standards have been met," and if so, the claim must survive. Plaintiff's Memorandum at 123. This is simply not so. Rather, courts engage in substantive review of the claims as well, a course of action to which the instant complaint is particularly well suited, given that plaintiff has set forth with such particularity the events and circumstances comprising the alleged hostile work environment. In Gregory v. Daly, the court, in ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss a hostile work environment claim, inquired whether "if proven, [the allegations would] establish that plaintiff was required to endure an environment that 'objectively' was *severely* and *pervasively* hostile." 243 F.3d at 693. That the complaint should be subjected to such a test is unremarkable; as a Fed. R. Civ. P. 12(b)(6) motion compels the court to determine, if all of the allegations in the complaint are proven to be true, whether the plaintiff would be entitled to relief. See, e.g., Patel v. Searles, 305 F.3d 130, 135 (2d. Cir. 2002). Here, if all of plaintiff's allegations regarding a hostile

---

[1] If it is to State defendants' enumeration of specific events in their memorandum that plaintiff refers in skewing State defendants' argument, it is submitted that the enumeration was done so that counsel, and the Court, would have a workable and concise recitation of relevant allegations, extracted from the complaint.

work environment were proven to be true, plaintiff would still not be entitled to relief because they do not amount to an objectively severe and pervasive hostile workplace, as a matter of law.

Furthermore, the continuing violation doctrine is not as sweeping as plaintiff suggests, and fails to preserve elements of her hostile work environment claim that are otherwise time-barred. "Acts occurring outside the limitations period that are significantly far apart from each other are 'fatal' to a continuing violation argument." Benjamin v. Brookhaven Science Associates, LLC, 387 F. Supp.2d 146, 154 (E.D.N.Y. 2005) (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)). Here, with the exception of one alleged comment in September 2000, plaintiff has failed to identify any specific acts occurring between late February 1997 and June 2002. Therefore, alleged "acts" occurring prior to June 2002 cannot be considered to salvage plaintiff's claim of a hostile work environment.

Finally, even assuming arguendo that plaintiff's allegations sufficiently alleged the existence of a hostile work environment as a general matter, this claim would still have no merit as it pertains to State defendants DeSole and D'Angelis. Plaintiff correctly notes in citing to Raniola v. Bratton, 243 F.3d 610 (2d Cir. 2001), that conduct overtly evincing religious and/or racial bias may allow an inference that other facially neutral conduct was motivated by bias and thus a component of the hostile

16

work environment. <u>Raniola</u>, however, proffers a crucial limitation upon this rule, which plaintiff ignores.  The court stated that "prior derogatory comments by a co-worker may permit an inference that further abusive treatment *by the same person* was motivated by the same sex-bias manifested in the earlier comments." <u>Raniola</u>, 243 F.3d at 622 (emphasis added).  Thus, there is no basis for plaintiff's allegations that the facially neutral yet allegedly hostile conduct of State defendants DeSole and D'Angelis contributed to the hostile work environment because these individuals are not alleged to have made prior derogatory comments.

Accordingly, plaintiff's hostile work environment claim must be dismissed.

17

## CONCLUSION

**FOR THE FOREGOING REASONS AND THOSE IN THEIR MOVING MEMORANDUM, STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT SHOULD BE GRANTED IN ALL RESPECTS**

Dated:      New York, New York
            January 11, 2006

                                    Respectfully submitted,

                                    ELIOT SPITZER
                                    Attorney General of the
                                     State of New York
                                    Attorney for State defendants
                                    By:


                                    _____/s_____
                                    CONSTANTINE A. SPERES (CAS-9100)
                                    Assistant Attorney General
                                    120 Broadway
                                    New York, New York 10271
                                    (212) 416-8567

CONSTANTINE A. SPERES
Assistant Attorney General
 of Counsel

EDWARD YENNOCK
Legal Intern

18

## DECLARATION OF SERVICE

_____CONSTANTINE A. SPERES pursuant to 28 U.S.C. § 1746,

declares under penalty of perjury as follows:

That on January 11, 2006, I served the annexed reply

Memorandum of Law on:

> Judith B. Memblatt
> Plaintiff pro se
> 98-51 65th Avenue
> Apt. 2-A
> Rego Park, New York 11374
>
> Madeleine S. Egelfeld, Esq.
> Attorney for Defendant Koslowitz
> 125-10 Queens Boulevard
> Suite 311
> Kew Gardens, New York 11415
>
> John Quinn, Esq.
> Renfroe & Quinn
> Attorneys for Defendants Manton,
> Sweeney and Reich
> 118-35 Queens Boulevard
> 14th Floor
> Forest Hills, N.Y. 11375

by depositing a true and correct copies thereof, properly enclosed

in a postpaid wrapper for overnight delivery via Federal Express,

in a Federal Express Box maintained at 120 Broadway, New York, New

York 10271, directed to said person(s) at the address within the

State designated by them for that purpose and/or in accordance with

the Eastern District's Rules On Electronic Service.


_____/s_____
CONSTANTINE A. SPERES

Executed On January 11, 2006